**JOHN F. KEENAN**, United States District Judge:

Before this Court are renewed cross-motions for summary judgment in this copyright infringement case. For the reasons set forth below, both motions are denied.

Factual Background

Dorothy Parker (1893-1967), the American author whose works often appeared in newspapers and magazines, collected many of her poems and published them in book form. Ms. Parker omitted from these books over one hundred of her works that had appeared in various periodicals. The Plaintiff, Stuart Y. Silverstein ("Silverstein"), by examining old issues of these periodicals and other sources, compiled approximately 122 of these previously uncollected works.

In 1994, Silverstien submitted a manuscript of his compilation, which contained a copyright notice, to the Defendant, Penguin Putnam, Inc. ("Penguin"). Penguin offered Silverstein $2,000 to publish the compilation as part of a larger collection of Dorothy Parker poems. Silverstein declined the offer and subsequently published his compilation through Simon & Schuster in the 1996 book *Not Much Fun: The Lost Poems of Dorothy Parker* ("*Not Much Fun*").

In 1999, Penguin published *Dorothy Parker: Complete Poems* ("*Complete Poems*"), which includes all of the poems collected

1

and published by Ms. Parker in book form as well as all of Ms. Parker's works collected and published by Silverstein in *Not Much Fun*.

121 of the 122 works[1] from *Not Much Fun* are collected chronologically in the final section of *Complete Poems* titled "Poems Uncollected by Parker." *Complete Poems* 211.  The editor at Penguin who prepared this section, Dr. Colleen Breese, admitted to photocopying *Not Much Fun*, and then cutting the poems apart and pasting them into the manuscript for *Complete Poems*.

## Procedural History

In reaction to Penguin's publication of the poems from *Not Much Fun* in *Complete Poems*, Silverstein brought suit against Penguin in this Court in 2001, alleging (i) copyright infringement under the Copyright Act of 1976, (ii) "reverse passing off" in violation of the Lanham Act, and (iii) immoral trade practices and unfair competition in violation of New York law.

On April 5, 2002, the parties cross-moved for summary judgment.  Silverstein argued that he had exercised the subjective creative judgment necessary to garner copyright protection by

---

[1] One poem, "Day Dreams," though included by Silverstein in *Not Much Fun*, had actually been previously collected and published by Ms. Parker in her 1926 book *Enough Rope*.  As such, Penguin includes it in a section of *Complete Poems* titled "Enough Rope (1926)."

2

deciding which uncollected Dorothy Parker poems and verse to include in *Not Much Fun*.  On April 4, 2003, the Court issued an Opinion and Order, finding Penguin liable on all claims and issuing an injunction against the sale of *Complete Poems*.  Silverstein v. Penguin Putnam, Inc., No. 01 Civ. 309, 2003 WL 1797848 (S.D.N.Y. Apr. 4, 2003).

Penguin appealed to the Second Circuit and applied to this Court for a stay of the injunction pending appeal.  This Court held that a stay of the injunction was not warranted.  Silverstein v. Penguin Putnam, Inc., No. 01 Civ. 309, 2003 WL 21361734 (S.D.N.Y. June 12, 2003).  This decision was also appealed to the Circuit.  After oral argument, the Second Circuit vacated the injunction and announced that a decision on the summary judgment appeal would follow.

On May 7, 2004, the Second Circuit issued its decision, which reiterated vacatur of the injunction, reversed the grant of summary judgment, and remanded for further proceedings to resolve certain factual issues, including "whether Silverstein is entitled to any protection for his selection of uncollected poems or whether, in fact, he simply published as many as he could find."  Silverstein v. Penguin Putnam, Inc., 368 F.3d 77, 78 (2d Cir. 2004).  If it is determined that Silverstein "knowingliy omitted . . . poems, question still remains as to whether that decision (alone or together with others) imbued his selection with sufficient

3

creativity to warrant copyright protection." Id. at 82.

The Second Circuit declined to review the grant of summary judgment on the Lanham Act and state law claims because "resolution of open issues of fact (as to the extent of Silverstein's creative input) may bear on the Lanham Act claim," and "the state law claims . . . likewise may turn on resolution of [these] questions." Id. at 85-86.

On remand, this Court now considers renewed cross-motions for summary judgment. The parties argue that the issues of fact identified by the Second Circuit have been resolved; each side, of course, argues for resolution in its favor.

## Discussion

A motion for summary judgment may be granted under Federal Rule of Civil Procedure 56 if the entire record demonstrates that "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). When viewing the evidence, the Court must "assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in its favor." Del. & Hudson Ry. Co. v. Consol. Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990); see also Anderson, 477 U.S. at 255; McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997). "[A]t the summary judgment stage the judge's function is not himself

4

to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

I. Copyright Infringement

On the copyright infringment claim, Silverstein must prove (i) ownership of a valid copyright and (ii) copying of the copyrighted works. Eckes v. Card Prices Update, 736 F.2d 859, 861 (2d Cir. 1984). Because there is a disputed material question of fact as to whether Silverstein's work is even entitled to copyright protection, as discussed below, this decision does not address the second prong of the copyright infringement test. The Court discusses the first prong below.

A. Ownership of a Valid Copyright

A copyright registration is prima facie evidence of a valid copyright. See 17 U.S.C. § 410(c); Folio Impressions, Inc. v. Byer Cal., 937 F.2d 759, 763 (2d Cir. 1991). In this case, Silverstein's registration with the Copyright Office is not in dispute. Rather, Penguin argues that Silverstein's compilation is not an original work of authorship and is, therefore, not entitled to copyright protection as a matter of law.

Under the Copyright Act of 1976, a compilation is "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of

5

authorship." 17 U.S.C. § 101.  The Supreme Court in Feist
Publications, Inc. v. Rural Telephone Service Co., 499 U.S. 340,
350-51 (1991), articulated the level of copyright protection
afforded to compilations: "A factual compilation is eligible for
copyright if it features an original selection or arrangement of
facts, but the copyright is limited to the particular selection or
arrangement.  In no event may the copyright extend to the facts
themselves."  For the selection or arrangement to be deemed
"original," only a minimal degree of creativity is required. Id. at
358.

In the present case, the Second Circuit's decision on
appeal noted that "the only copyright claimed by Silverstein that
Penguin arguably infringed is in the selection." Silverstein, 368
F.3d at 84.  When it comes to the selection of information,
"creativity inheres in making non-obvious choices from among more
than a few options." Matthew Bender & Co. v. West Publ'g Co., 158
F.3d 674, 682 (2d Cir. 1998).  The Second Circuit, therefore, called
upon Silverstein to prove that his selection of Parker poems and
verse was guided by principles other than all-inclusiveness.
Silverstein, 368 F.3d at 79.  In other words, did Silverstein merely
compile as many uncollected poems and verse as he could find, or did
he compile only what he determined to be the best of a larger pool
of Ms. Parker's uncollected poems and verse?

   1. <u>Silverstein's Summary Judgment Motion</u>

Silverstein argues the latter, that he purposely decided to exclude certain uncollected Dorothy Parker poems and verse from *Not Much Fun*. By way of example, Silverstein directs the Court's attention to several works classified by Randall L. Calhoun, a well-known Dorothy Parker scholar, in his bio-bibliography of Ms. Parker, that do not appear in *Not Much Fun*.[2] Silverstein contends that he consulted Professor Calhoun's bio-bibliography prior to publishing *Not Much Fun* and that his failure to include several works classified by Calhoun as poems was not a mere oversight. Penguin counters that Silverstein may have simply stumbled upon Calhoun's book in the course of litigation. At the summary judgment stage, the Court cannot decide how heavily to weigh Silverstein's claim that he read Calhoun's book before publishing *Not Much Fun*, see Anderson, 477 U.S. at 249, and Silverstein has offered no conclusive evidence to corroborate this claim.

As another example of Silverstein's alleged deliberate exclusion of uncollected Dorothy Parker poems and verse, Silverstein refers to two uncollected Dorothy Parker poems that were published

---

[2] Silverstein has also submitted the Affidavit of Randall L. Calhoun, dated February 1, 2005, and Penguin has submitted the Declaration of Randall L. Calhoun, dated July 14, 2005. Silverstein moves to strike the Declaration, pursuant to the "sham affidavit" rule, arguing the Declaration directly contradicts the earlier Affidavit. The Court reserves decision on the motion to strike. At present, neither document is relevant to the issue under consideration because neither resolves whether Silverstein knew of Calhoun's book prior to publishing *Not Much Fun*.

7

in *Life* magazine, which do not appear in *Not Much Fun*. The first poem, "Playing Safe," appeared in the January 19, 1922 issue of *Life*, the same issue from which Silverstein selected "Figures in Popular Literature: The Sheik" to include in *Not Much Fun*. The second poem, "Standardized Song Sheet for Get Together Meetings,"[3] was published in the July 27, 1922 issue of *Life*. Though Silverstein did not include "Standardized Song Sheet" in *Not Much Fun*, he did include other poems and verse that were published in the June and July issues of *Life* magazine from the same year. Silverstein argues that, because "Playing Safe" and "Standardized Song Sheet" appeared in a publication he had searched thoroughly for Parker poems, and in one case in the same issue, he obviously knew these poems existed and did not just overlook them by mistake. It almost goes without saying, however, that even the best scholars make mistakes. (In *Not Much Fun*, Silverstein himself included by mistake "Day Dreams," a poem that Ms. Parker had previously collected.) Therefore, the question whether Silverstein consciously excluded "Playing Safe" and "Standardized Song Sheet," or did so by mistake, is one for a factfinder to determine.

This same reasoning applies to Silverstein's inclusion of Dorothy Parker's "Higgledy Piggledy" in the introduction to, but not

---

[3] According to Silverstein, "Standardized Song Sheet for Get Together Meetings" is six separate items. (Silverstein Supp. Aff. ¶ 6.)

in the body of, *Not Much Fun*. Silverstein claims he deliberately "did not select 'Higgledy Piggledy' to appear with the poems in *Not Much Fun*" because he considered it to be "more an example of ad-libbed wit than of art." (Silverstein Supp. Aff. ¶ 8.) Determining whether this exclusion was purposeful or a mistake would require the Court to make credibility determinations, which it cannot do on summary judgment. See Anderson, 477 U.S. at 249.

Silverstein claims that the language he uses in his Introduction to *Not Much Fun* proves that Silverstein subjectively considered his work a selection of works from a larger pool of uncollected Parker poems. The relevant language states: "Those precarious undertakings called 'art' are considered and judged through intensely personal yet hazy prisms of emotion, taste and experience. This collection will ultimately be measured on those grounds." *Not Much Fun* 65. This language does not really prove anything, much less that Silverstein's book is a selection from a larger universe of Ms. Parker's uncollected poems and verse.

Whether a particular work possess the quantum of creativity necessary for copyright protection is usually a question of law, but "threshold factual determinations in this regard, of course, are for the jury." 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 12.10[B][1] (2005). In this case, a threshold factual determination exists: whether Silverstein thought he was publishing a selection from a larger body of Parker's uncollected works or as

9

many as he could find.  For this reason, the Court denies summary judgment on Plaintiff's copyright claim.

### 2. Penguin's Summary Judgment Motion

This same question of fact precludes summary judgment in Penguin's favor.  In support of its motion, Penguin cites language from *Not Much Fun* that it claims proves that Silverstein thought his book contained all of Parker's uncollected poems.  *Not Much Fun* contains what purports to be a complete chronology "of all of Dorothy Parker's poems and verses." *Not Much Fun* 245.  Because of this language, Penguin claims Silverstein is estopped from proving that Silverstein thought he was doing anything other than collecting all of Parker's uncollected works.  However, viewing the evidence in a light most favorable to Silverstein, there is a dispute regarding Silverstein's role in preparing the chronology, which appears at the back of *Not Much Fun*, and whether "all" refers to all of Parker's poems and verse that have now been collected in book form, or more generally to the entire universe of Parker poems and verse, whether collected or not.

Similarly, the Court reads several letters written by or at the direction of Silverstein in a light most favorable to Silverstein. For example, in a December 4, 1994 letter from Silverstein to Ned Himmelrich, attorney for the NAACP, Silverstein writes "If the NAACP is aware of the existence of any other poems written by Mrs. Parker that [are] uncollected and copyrighted, I would appreciate being informed of their existence." (Def.'s Ex. 26.)  Penguin claims this language proves that Silverstein thought

10

he was collecting as many Dorothy Parker poems as he could find. This language could mean, however, that Silverstein wanted the opportunity to evaluate the complete universe of Ms. Parker's uncollected works before subjectively determining which to include in *Not Much Fun*. Therefore, the Court denies summary judgment dismissing Silverstein's copyright claim.

II. Lanham Act and State Law Claims

The Court also denies summary judgment either dismissing or granting the Lanham Act and state law claims because resolution of the question of fact identified with regard to the copyright claim may bear upon the Lanham Act and state law claims. See Silverstein, 368 F.3d at 85-86; see also Waldman Publ'g Corp. v. Landoll, Inc., 43 F.3d 775, 781 (2d Cir. 1994).

## Conclusion

Having fully considered the arguments made by both parties in this case, the Court denies summary judgment. The parties are to appear before the Court for a scheduling conference on June 28, 2006 at 10:30 AM.

**SO ORDERED.**
Dated:      New York, New York
            May 3 , 2006

                                  */s/ John F. Keenan*
                                  **JOHN F. KEENAN**
                                United States District Judge