```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
STUART Y. SILVERSTEIN,         :

                Plaintiff,     :
                                         01 Civ. 309 (JFK)
        -against-              :
                                         **Opinion and Order**
PENGUIN PUTNAM, INC.,          :

                Defendant.     :
------------------------------X
```

**JOHN F. KEENAN, United States District Judge:**

Before the Court is Defendant Penguin Putnam, Inc.'s application for attorneys' fees and costs pursuant to § 505 of the Copyright Act, 17 U.S.C. § 505, and for attorneys' fees pursuant to § 35(a) of the Lanham Act, 15 U.S.C. § 1117(a). For the reasons discussed below, the motion is DENIED.

## Background

More than seven years ago, Stuart Y. Silverstein ("Silverstein") commenced this action against Penguin Putnam, Inc. ("Penguin"), claiming that he owned a compilation copyright in <u>Not Much Fun: The Lost Poems of Dorothy Parker</u> (Scribner 1996)("<u>Not Much Fun</u>"), a collection of Dorothy Parker's previously uncollected poems, and that Penguin infringed this copyright by photocopying these poems from his book and reproducing them in a chapter of Penguin's book, <u>Dorothy Parker: Complete Poems</u> (Penguin Books 1999) ("<u>Complete Poems</u>"). Silverstein also asserted claims of "reverse passing off" under

the Lanham Act and unfair competition and immoral trade practices under New York state law.

On April 4, 2003, this Court entered summary judgment for Silverstein and enjoined Penguin from selling or further distributing Complete Poems. Silverstein v. Penguin Putnam, Inc., No. 01 CV 309, 2003 WL 1797848 (S.D.N.Y. Apr. 4, 2003), vacated, 368 F.3d 77 (2d Cir. 2004). The Court found that Not Much Fun was entitled to copyright protection based upon creativity in its selection, arrangement and coordination of poems, and that Penguin violated this copyright. Id. at **4-7. The Court also awarded summary judgment to Silverstein on his Lanham Act and state law claims. Id. at **7-8.

Penguin appealed, and, on May 7, 2004, the Court of Appeals for the Second Circuit reversed the award of summary judgment on the copyright claim insofar as it was based on Not Much Fun's arrangement of poems and the edits that Silverstein made and the titles he gave to some of the poems. Silverstein v. Penguin Putnam, Inc., 368 F.3d 77, 78, 83 (2d Cir. 2004). The Second Circuit also vacated the judgment that Silverstein's selection of poems was protectible, finding that issues of material fact existed as to whether Silverstein's decisions to include or exclude certain Parker works demonstrated creative judgment and, if so, whether such creativity was sufficient for

copyright protection to attach. Id. at 81-83. The Second Circuit remanded the case for resolution of these factual issues.

After the remand, the parties renewed cross-motions for summary judgment. The Court denied these motions on May 3, 2006, finding that issues of material factual existed for trial. Silverstein v. Penguin Putnam, Inc., No. 01 CV 309, 2006 WL 1192769 (S.D.N.Y. May 3, 2006).

This case was tried without a jury from July 17, 2007 through July 25, 2007. On November 7, 2007, the Court issued a written decision in favor of Penguin on the copyright infringement, Lanham Act, and state law claims, see Silverstein v. Penguin Putnam, Inc., 522 F. Supp. 2d 579 (S.D.N.Y. 2007), familiarity with which is presumed.

The matter was vigorously, forcefully and animatedly litigated at all stages of the proceedings.

## Discussion

Penguin seeks the attorney's fees and costs that it incurred in this action since the Second Circuit's May 2004 remand pursuant to § 505 of the Copyright Act, 17 U.S.C. § 505, and § 35(a) of the Lanham Act, 15 U.S.C. § 1117(a). Penguin estimates such fees at $877,357.00 and costs at $21,290.58, plus

its fees and costs associated with making the instant motion.

### A. Award of Fees under § 505 of the Copyright Act

Under Section 505 of the Copyright Act, this Court "in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. An award of attorneys' fees is at the discretion of the district court, and prevailing defendants and plaintiffs are to be treated alike. Fogerty v. Fantasy, Inc._, 510 U.S. 517, 534 (1994).

The ultimate question is whether an award of costs and fees would further the policies of the Copyright Act. See Matthew Bender & Co. v. West Publ'g Co._, 240 F.3d 116, 122 (2d Cir. 2001). Although there is no precise formula to this determination, courts exercising their discretion are guided by the non-exclusive factors of "'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" Crescent Publ'g Group, Inc. v. Playboy Enters._, 246 F.3d 142, 147 (2d Cir. 2001) (quoting Fogerty_, 510 U.S. at 534 n. 19)).

The Second Circuit has recognized that the factor of objective reasonableness "should be given substantial weight in determining whether an award of attorneys' fees is warranted" because "the imposition of a fee award against a copyright holder with an objectively reasonable litigation position will generally not promote the purposes of the Copyright Act." Matthew Bender & Co., 240 F.3d at 121-22. "This is because such attorney fee awards may chill litigation of close cases, preventing the clear demarcation of the boundaries of copyright law." Ariel (UK) Ltd. v. Reuters Group PLC, No. 05 Civ. 9646, 2007 WL 194683, at *1 (S.D.N.Y. Jan. 24, 2007), quoting Hofheinz v. AMC Prods., No. 00 Civ. 5827, 2003 U.S. Dist. LEXIS 16940, at *17 (E.D.N.Y. Sept. 1, 2003), citing in turn Fogerty, 510 U.S. at 527.

Penguin argues that it should be awarded its costs and attorneys' fees because (i) Silverstein's copyright claim was objectively unreasonable as a factual and legal matter; (ii) Silverstein engaged in bad faith conduct during the litigation; and (iii) the goals of compensation and deterrence would be served by an award of fees and costs. These factors are discussed in turn below.

(i) <u>Objective Unreasonableness</u>

"In the copyright context, 'the courts of this Circuit have generally concluded that only those claims that are clearly without merit or otherwise patently devoid of legal or factual basis ought to be deemed objectively unreasonable.'" <u>Ariel(UK) Ltd.</u>, 2007 WL 194683, at *2 (quoting <u>Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.</u>, No. 96 Civ. 4126, 2004 WL 728878, at *7 (S.D.N.Y. Apr. 6, 2004). Of course, "an unsuccessful claim does not necessarily equate with an objectively unreasonable claim." <u>Ann Howard Designs, L.P. v. Southern Frills</u>, 7 F. Supp. 2d 388, 390 (S.D.N.Y. 1998). Section 505 does not "establish a per se entitlement of attorney's fees whenever issues pertaining to judgment are resolved against a copyright plaintiff." <u>Ariel(UK) Ltd.</u>, 2007 WL 194683, at *2 (quoting <u>Nicholls v. Tufenkian Import/Export Ventures, Inc.</u>, 2005 WL 1949487, at *3 (S.D.N.Y. Aug. 11, 2005)). This is not the United Kingdom.

Penguin claims that, following the remand, Silverstein knew that he simply selected all of Parker's poems for inclusion in <u>Not Much Fun</u> and that each work chosen was objectively recognizable as a poem. Therefore, according to Penguin, Silverstein lacked a reasonable basis to assert during trial

6

that his selection decisions entailed protectible creativity.

The procedural history of this case up until trial suggests that Silverstein's claim to creativity in his selection of poems was not frivolous. The Court initially awarded him summary judgment after finding that his selection of poems for Not Much Fun, together with their arrangement and coordination within the book, "reflected substantial creativity." Silverstein, 2003 WL 1797848, at *4. Although the Second Circuit disagreed with the Court's conclusion as a matter of law, it nevertheless found that "material questions of fact exist[ed] as to whether Silverstein exercised creativity in selecting the works for his compilation." Silverstein, 368 F.3d at 83. Following remand, the Court found that disputed factual issues required a trial and denied the parties' renewed cross-motions for summary judgment. Silverstein, 2006 WL 1192769, at **3-4. These rulings recognized the objective validity of Silverstein's copyright claim, at least on its face, and pushed the case to trial.

The trial revealed that the factual and legal basis of Silverstein's claim to copyright protection was objectively reasonable. It was undisputed that Silverstein registered a copyright for Not Much Fun with the Copyright Office, entitling

the book to a presumptively valid copyright. As a consequence, at trial Penguin bore the burden of rebutting this presumption and needed to prove that the compilation lacked even a "minimal degree of creativity." It is true that, following a nine-day trial, the factual and legal issues in this case were resolved decisively in Penguin's favor. This, of course, does not mean that Silverstein's claim was objectively unreasonable. As a factual and legal matter, it was not unreasonable for Silverstein to maintain that a minimal amount of creativity inhered in his decision to exclude certain Parker works which reasonably could be deemed poems, such as "Standardized Song Sheet" and "Higgledy Piggledy," and also in his inclusion of works that others might not classify as poems, such as "When We Were Very Sore." Also, his argument that he employed the requisite quantum of creativity by collecting Parker's traditional poems with her free verses, although unconvincing, was at least colorable. Furthermore, Silverstein's theory that classifying a writing as a poem is an inherently subjective and creative determination was a somewhat novel one that had appealed to the Court at an earlier stage of the litigation. See Silverstein v. Penguin Putnam, Inc., No. 01 Civ 309, 2003 WL 1797848 (granting Silverstein summary judgment on his copyright

8

claim and stating that "it would be improvident for this Court to conclude that determining what is poetry is not a subjective process"). In sum, the Court finds that Silverstein's copyright claim was objectively reasonable, and this factor weighs heavily against an award of costs and attorneys' fees under the Copyright Act.[1]

(ii) Bad Faith Conduct

In addition to the factors listed above for determining whether an award of fees under the Copyright Act is warranted, the Second Circuit has stated that a losing party's "bad faith in the conduct of the litigation is a valid ground for an award of fees." Matthew Bender, 240 F.3d at 125. Pointing to a litany of allegedly unscrupulous litigation tactics, Penguin argues that Silverstein's bad faith conduct, particularly with respect to his treatment of Professor Calhoun, warrants an award of attorney's fees.

Most of the conduct that Penguin complains of was within the bounds of permissible advocacy. For example, Penguin alleges that Silverstein secretly arranged for Calhoun to

---

[1] It is also worth noting that, had Silverstein been able to maintain the presumption that Not Much Fun reflected a minimal amount of creativity, his claim that Penguin infringed his copyright was very strong. At trial, Penguin's agents admitted that they photocopied the pages of Not Much Fun and rearranged them to produce a chapter in Complete Poems.

9

execute a short, narrowly tailored affidavit and then asserted in bad faith that this affidavit resolved all factual issues in Silverstein's favor. As Penguin acknowledged at oral argument, nothing prohibits a party from obtaining an affidavit from a non-party witness without first notifying the other side. In fact, Penguin itself responded by obtaining its own affidavit from Calhoun. Penguin also claims that Silverstein crossed the line by subpoenaing Calhoun's telephone records in a failed attempt to uncover some illicit deal between Calhoun and Penguin that would explain a perceived inconsistency between Calhoun's two affidavits. However, the Court authorized this subpoena after concluding that Silverstein had taken adequate steps to protect Calhoun's privacy. Silverstein and his counsel's repeated and unfounded accusations of impropriety on the part of Penguin and its lawyers were indeed reckless and uncalled for. Nevertheless, such regrettable conduct during this long and acrimonious litigation was not egregious enough to warrant an award of attorney's fees, especially in light of the conclusion that Silverstein's claim was objectively reasonable.

Moreover, the Court has no reason to doubt that, throughout the litigation, Silverstein sincerely believed that his book was entitled to copyright protection and pursued his

claim for the purpose of vindicating his rights.  This factor weighs against awarding cost and attorneys' fees against him.

        (iii) <u>Considerations of Compensation and Deterrence</u>

        Finally, Penguin asserts that an award of attorneys' fees and costs is needed to deter baseless copyright claims, to encourage defendants to assert meritorious defenses against such claims, and to compensate Penguin for the costs of defending this lawsuit.  Because Silverstein's copyright claim was objectively reasonable, it follows that an award of costs and fees to Penguin would not serve to deter baseless claims.  Such an award may even chill the litigation of claims in close cases, a result that would be at odds with the ends of the Copyright Act.

        Furthermore, there is no compelling reason to compensate Penguin for having to defend this case.  Penguin solicited Silverstein's manuscript by expressing an interest in publishing it.  Penguin then offered him two thousand dollars to assemble a complete volume of Parker poetry that would include the poems from his manuscript.  When Silverstein rejected this offer and instead went with another publisher, Penguin hired an outside editor who, with Penguin's knowledge, photocopied the pages of Silverstein's book and rearranged them to create a

chapter of the competing publication, Complete Poems.  Penguin's sharp treatment of Silverstein, though lawful under the Copyright Act, naturally invited a lawsuit, and Penguin should bear the costs of defending its behavior.

Therefore, an award of costs and attorneys' fees in this case is not in order pursuant to § 505 of the Copyright Act.

**B. Award of Attorneys' Fees Under § 35(a) of the Lanham Act**

Section 35(a) of the Lanham Act authorizes an award of attorneys' fees only in "exceptional cases," 15 U.S.C.A. § 1117(a), which the Second Circuit has understood to mean cases involving "fraud or bad faith" or "willful infringement." Patsy's Brand, Inc. v. I.O.B. Realty, Inc., 317 F.3d 209, 221 (2d Cir. 2003) (internal citations omitted).  Penguin asserts that Silverstein's bad faith may be inferred from his maintenance of an allegedly baseless reverse passing off claim under the Lanham Act.  More particularly, Penguin contends that Silverstein acted in bad faith by continuing to press his reverse passing off claim following the Supreme Court's decision in Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 30-31 (2003).

Silverstein's attempt to distinguish Dastar was not so

feeble that the Court can infer bad faith from it.  Silverstein sought to sustain his reverse passing off claim by arguing that the rule laid down in Dastar does not apply to copyrighted works.  Finding that Silverstein's book had no valid copyright, the Court declined to resolve this question but indicated that "Dastar's holding does not seem to turn on the copyright status of the reproduced material." Silverstein, 522 F.Supp.2d at 602 n.12.  Though the distinction that Silverstein urged was certainly weak, and the Court cited several lower court decisions rejecting it, it was not baseless.  Part of the Supreme Court's rationale in Dastar was to prevent the use of a reverse passing off claim under the Lanham Act to "create a species of mutant copyright law that limits the public's federal right to copy and to use expired copyrights." Dastar, 539 U.S. at 34. (emphasis added and internal quotation marks deleted). This rationale creates some room to argue that Dastar's outcome might have been different had the reproduced material there at issue not been in the public domain.  Significantly, there was no controlling authority rejecting such an argument when Silverstein made it.  Accordingly, the Court cannot conclude that Silverstein's maintenance of his reverse passing off claim in the face of Dastar was so frivolous as to rise to the level

of bad faith.

## Conclusion

For the foregoing reasons, Penguin's motion for attorney's fees and costs is DENIED.

SO ORDERED.

Dated:    New York, New York
          March 12, 2008

                                  *signature*
                              JOHN F. KEENAN
                         United States District Judge